# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY OWENS, | ) | CASE NO. 3:10-CV-00282 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| JESSE WILLIAMS, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Anthony Owens ("Owens"), challenges the constitutionality of his conviction in the case of *State v. Owens*, Allen County Court of Common Pleas Case No. CR-2006-0345. Allen, *pro se*, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on February 8, 2010.  On May 24, 2010, Warden Jesse Williams ("Respondent") filed his Answer/Return of Writ.  (Doc. No. 12.)  Owens filed a Traverse on July 23, 2010.  (Doc. No. 16.)  For reasons set forth in detail below, it is recommended that Owens's petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Owens's conviction as follows:

[*P2]  On July 16, 2006, the Comfort Inn located in Allen County, Ohio was

robbed.  The Allen County Grand Jury indicted Owens for aggravated robbery in violation of R.C. 2911.01(A)(1), a first degree felony on August 30, 2006.

[*P3]  On October 30, 2006, Owens waived his right to an attorney, and on November 3, 2006, a written waiver of counsel was filed.  On November 7, 2006, the trial court allowed F. Stephen Chamberlain to withdraw as counsel of record but appointed him as standby counsel "to lend technical support to defendant during hearings or trial."

[*P4]  On August 9, 2007, Owens requested counsel be reappointed, and the trial court reappointed Attorney Chamberlain. Owens requested that he be appointed different trial counsel on August 30, 2007.  (Tr. 8/30/07 at 10).  The trial court denied Owens' request for new court appointed counsel.  (Id. at 16).  Owens clearly stated that he did not want Attorney Chamberlain to represent him.  (Id. at 14-16).  The trial court informed Owens that he could: (1) hire an attorney of his own choosing; (2) have Attorney Chamberlain as his court-appointed counsel; or (3) represent himself. (Id. at 16).  Attorney Chamberlain continued to represent Owens that day. (Id. at 16).

[*P5]  A jury trial was held on September 4, 5, 6, and 7, 2007.  On the first day of trial, Owens waived his right to counsel, and Attorney Chamberlain was appointed as standby counsel.  (Tr. 9/4/07-9/7/07 at 36).  The jury found Owens guilty of aggravated robbery.  Thereafter, the trial court held a sentencing hearing and sentenced Owens to ten years imprisonment.

*State v. Owens*, 2008 Ohio App. LEXIS 3519, 2008-Ohio-4161 at ¶¶2-7 (Ohio Ct. App., Aug. 18, 2008)

## II.  Procedural History

### A.  Conviction

On August 30, 2006, an Allen County Grand Jury charged Owens with one count of aggravated robbery in violation of Ohio Revised Code ("O.R.C.") § 2911.01(A)(1).  (Doc. No. 12, Exh. 1.)  Owens represented himself at trial with attorney F. Stephen Chamberlain serving as shadow counsel.  (Doc. No. 12, Exhs. 2, 3 & 4.)  On September 7, 2007, a jury found Owens guilty as charged.  (Doc. No. 12, Exh. 4.)  On the same day, the trial court sentenced Owens to a term of ten years incarceration and up to five years of post-release control.  *Id*.

**B.    Direct Appeal**

On September 24, 2007, Owens, through different counsel, filed a timely Notice of

Appeal with the Court of Appeals for the Third Appellate District ("state appellate court").  He

raised the following assignments of error:

> 1.    The court erred when it accepted Mr. Owens' waiver of counsel without
>        sufficient examination of whether it was knowing and intelligent.  Sixth
>        Amendment, United States Constitution; Section 10, Article I, Ohio
>        Constitution.  Jury Trial Transcript, Vol. I, at 38.
>
> 2.    The court erred when it limited standby counsel's role depriving Mr. Owens
>        of his right to proceed *pro se* with the assistance of standby counsel.  Section
>        10, Article I, Ohio Constitution; Motion to Suppress Transcript, December
>        14, 2006, at 11; Judgment Entry in re Pending Motions, March 13, 2007.
>
> 3.    The court erred when it failed to apply a real sanction to a discovery
>        violation.  Jury Trial Transcript, Vol. II, at 395.
>
> 4.    The State's failure to preserve the 911 or police dispatch tape rendered the
>        trial fundamentally unfair.  Due Process Clause of the United States
>        Constitution; Fourteenth Amendment to the United States Constitution;
>        Section 2, Article I, Ohio Constitution; Jury Trial Transcript, Vol. II, at 395.

(Doc. No. 12, Exh. 6.)

Owens's conviction was affirmed on August 18, 2008.[1]  (Doc. No. 12, Exh. 12.).

On September 29, 2008, Owens, *pro se*, filed a timely Notice of Appeal with the Supreme

Court of Ohio.  (Doc. No. 12, Exh. 13.)  Owen raised the following propositions of law:

> I.    The court erred when it accepted Appellant's waiver of counsel without
>        sufficient examination of whether it was knowing and intelligent.  Sixth
>        Amendment, United States Constitution; Section 10, Article I, Ohio
>        Constitution.

---

[1] Owens sought to file a supplemental assignment of error alleging that his indictment
was defective because it failed to include all essential elements of the offense charged.
(Doc. No 12, Exh. 9.)  The state appellate court denied Owens's motion to file a
supplemental assignment of error as untimely and meritless.  (Doc. No. 12, Exh. 11.)

II.    The court erred when it limited standby counsel's role depriving Appellant of his right to proceed *pro se* with the assistance of standby counsel.  Section 10, Article I, Ohio Constitution.

III.   The State of Ohio fail[ed] to comply with motions for discovery under *Brady v. Maryland*, 373 U.S. 83 (1963) and withheld excupable [sic] evidentiary material.

(Doc. No. 12, Exh. 14.)

On February 9, 2009, the appeal was dismissed as not involving any substantial constitutional question.  (Doc. No. 12, Exh. 15.)

**C.    Application to Reopen Appeal / Postconviction Relief**

On November 10, 2008, while his direct appeal was pending before the Supreme Court of Ohio, Owens filed an application to reopen his appeal pursuant to Appellate Rule 26(B).  (Doc. No. 12, Exh. 16.)  Owens alleged that his appellate counsel was ineffective for failing to raise the following assignments of error:

1.    The prosecution in this matter engaged in a pervasive pattern of misconduct through the proceeding which combined to deprive the Appellant of his right to a fair trial, in violation of the Fifth, Sixth and Fourteenth Amendment[s] to the United States Constitution and comp[a]rable provisions of the Ohio Constitution.

2.    Appellant's state constitutional right to a grand jury indictment, and rights to due process were violated when his indictment omitted an element of the offense, in violation of the Sixth and Fourteenth Amendment[s] to the United States [Constitution] and comp[a]rable provisions of the Ohio Constitution.

3.    The trial court erred in failing to grant the Appellant's motion for judgment of acquit[t]al  on the charge, as the evidence presented was not legally sufficient to support a conviction.

4.    Whether the trial court committed error prejudicial to the Defendant by overruling the motion of the Defendant to exclude testimony of State of Ohio witness investigator DeLong regarding video testimony.

-4-

> 5. The trial court erred by not tailoring the scope of the State's questioning of video expert and should have ensured that juror's [sic] were instructed as to the limits of the expert's testimony.

(Doc. No. 12, Exh. 16.) On January 13, 2009, the state appellate court denied Owens's application to reopen, finding that he failed to establish sufficient prejudice as inclusion of these assignments of error would not have altered the outcome of the appeal. (Doc. No. 12, Exh. 18.) No appeal was taken from this decision.

On December 10, 2009, Owens filed a motion to vacate and reenter judgment pursuant to Ohio Civil Rule 60(B)(5). (Doc. No. 12, Exh. 19.) Owens asserted that he never received notice of the state appellate court's denial of his Rule 26(B) application. *Id.* The state appellate court denied the motion. (Doc. No. 12, Exh. 20.) No appeal was taken from this decision.

**D. Federal Habeas Petition**

On February 8, 2010, Owens filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

> **GROUND ONE**: The State of Ohio erred when it accepted Owens['s] waiver of counsel without sufficient examination of whether it was knowing, intelligent and voluntar[y], in violation of the right to [Counsel], Due Process.

> **Supporting Facts**: Failure during waiver of counsel colloquy to advise Owens if convicted, his sentence included a mandatory five year term of post-release control, and consequences he would fac[e] upon violating could carry further incarceration of up to 50 percent of his original sentence. Neither of the elements nor the statutory language were discussed (nature of charges) and mitigation was never explained. Failed to explain how waiver of counsel would affect Owens['s] opportunity to claim ineffective assistanc[e] of right to counsel, and in violation of due process.

(Doc. No. 1.)

-5-

### III. Exhaustion and Procedural Default

**A.    Exhaustion Standard**

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),( c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B.    Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate

grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely

---

[2]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id.* at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A

petitioner can take four actions in his brief which are significant to the determination as to

whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon

federal cases employing constitutional analysis; (2) reliance upon state cases employing federal

constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms

sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts

well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir.

2003).

     A petitioner's procedural default, however, may be excused upon a showing of "cause"

for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at

138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense

impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434

F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with

constitutional error."  *Id*.  Where there is strong evidence of a petitioner's guilt and the evidence

supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See*

*United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th

Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless

petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been

different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*,

527 U.S. 263, 289 (1999)).

     Finally, a petitioner's procedural default may also be excused where a petitioner is

actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

**A.    Analysis**

Respondent asserts that ground one of the petition is procedurally defaulted, because it was not fairly presented in state court. (Doc. No. 12 at 10-12.) While Owens argued on direct appeal that his right to counsel was violated and his waiver was not knowing, intelligent, and voluntary, Respondent contends that he never raised the specific argument he now raises – that his waiver was invalid since he was never informed of the consequences of violating the terms of his post-release control. *Id*. Owens did indeed fail to raise on direct appeal the issue of not being informed of the potential consequences for violating the conditions of post-release control. (Doc. No. 12, Exh. 6.) Because Ohio courts would no longer consider this claim due to the doctrine of *res judicata*, this portion of his habeas ground is procedurally defaulted. Nonetheless, because the petition raises other issues related to the waiver of counsel, a review on the merits is warranted.

**IV.  Review on the Merits**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

-9-

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly

-10-

established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Ground One: Waiver of Right to Counsel**

In his sole ground for relief, Owens argues that the State of Ohio violated his right to counsel and Due Process, as it accepted his waiver of counsel when it was not knowing, intelligent and voluntary.  (Doc. No. 1.)  Specifically, Owens argues that the trial court, while informing him of the range of penalties prior to his waiver of the right to counsel, neglected to inform him that his sentence was subject to a mandatory term of five years of post-release control.[3]  (Doc. No. 16 at 9.)  Owens's petition can also be construed as further raising the arguments that his waiver was invalid because the elements of the charges against him were not explained, that mitigation was not explained, and that it was not explained that he would be unable to claim ineffective assistance of counsel if he represented himself.  (Doc. No. 1 at 5.)  Respondent, on the other hand, contends that Owens's waiver was indeed knowing, intelligent, and voluntary, as the trial court fully informed him of the charges, their potential penalties, and the risks of self-representation.  (Doc. No. 12.)

> Waiver of the right to counsel by an accused must be knowing, voluntary and intelligent (*Johnson v. Zerbst*, 304 U.S. 458, 464-65, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938)).  For any such waiver to be effective, the accused "should be made aware of the dangers and disadvantages of self-representation, so that the record

---

[3]  Owens also avers that he was never advised that a violation of post-release control could result in an additional five years of incarceration.  (Doc. No. 16 at 9.)

-11-

will establish that 'he knows what he is doing and his choice is made with eyes open'" (*Faretta*, 422 U.S. at 835, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942).

*Moore v. Haviland*, 531 F.3d 393, 402 (6th Cir. 2008); *accord Forster v. Steward*, 360 Fed. Appx. 604, 605 (6th Cir. 2010) ("A waiver qualifies as knowing and intelligent where the defendant possesses 'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'") (*quoting Moran v. Burbine*, 475 U.S. 412, 421 (1986)).  Voluntariness, on the other hand, "requires the defendant's decision to be 'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Id.*

The state appellate court considered Owens's claim that his waiver of the right to counsel was invalid:

> [*P8]  In his first assignment of error, Owens argues that his conduct through the proceedings should have alerted the trial court to problems with Owens representing himself.  Owens maintains that his actions should have put the trial court on notice that he could not give a knowing and intelligent waiver.  Specifically, Owens points to: (1) the repetitious motions he filed which had already been denied by the trial court; (2) the irrelevant subpoenas that were quashed; (3) his lack of a legal education; (4) his erroneous statement that intent to harm was an element of the offense, even after being corrected by the trial court; (5) the fact that he made a distinction between robbery and theft, noting that this crime only constitutes a theft; and (6) the fact that he waived counsel on the day of trial.  In addition, Owens argues that he stated multiple times that he was forced to represent himself because his trial counsel failed to get an expert to review the surveillance tape, and he thought that representing himself was the only way to preserve the error.

> [*P9]  The Sixth Amendment to the United States Constitution provides that an accused shall have the right "to have the Assistance of Counsel for his defense."  Although a defendant has a right to counsel, the defendant may "waive that right when the waiver is voluntary, knowing, and intelligent."  *State v. Petaway*, 3d Dist. No. 8-05-11, 2006 Ohio 2941, P8, *citing State v. Gibson* (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, paragraph one of the syllabus, *citing Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.  "'[T]o establish an effective waiver of right to counsel, the trial court must make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes

-12-

that right.'" *Id*. at P9, *citing Gibson*, 45 Ohio St.2d at paragraph two of the syllabus.

[*P10]  In order for the defendant's waiver of counsel to be valid "'such waiver must be made with an apprehension of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'" *Gibson*, 45 Ohio St.2d at 377, *quoting Von Moltke v. Gillies* (1948), 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309.

[*P11]  On October 30, 2006, Owens indicated that he wanted to represent himself.  (Tr. 10/30/06 at 18).  The trial court inquired into whether Owens understood that he had the right to an attorney and informed Owens that he would be held to the same rules of evidence and criminal procedure that bind any lawyer. (Id. at 21-24).  The trial court further warned Owens that the court could not provide him legal assistance.  (Id. at 26).  The trial court also informed Owens of the elements of the charge that the prosecution must prove and possible defenses to the charge.  (Id. at 27).  The trial court also warned Owens of the possible prison term of three, four, five, six, seven, eight, nine, or ten years if he were convicted, ***and that he was subject to five years of post-release control***. (Id. at 28-29).  In addition, the trial court informed Owens of the potential difficulties he may face if he is not represented by an attorney, including the fact that it may be easier for an attorney to contact potential witnesses and perform legal research. (Id. at 34). The trial court also urged Owens to have counsel represent him. (Id. at 35). However, Owens waived his right to an attorney, and the trial court accepted his waiver of counsel. (Id. at 44-45).

 [*P12]  Attorney Chamberlain was appointed as standby counsel on November 7, 2006.  Owens then requested that counsel be reappointed, and the trial court reappointed Attorney Chamberlain on August 9, 2007.  Owens requested that new counsel be appointed on August 30, 2007, which the trial court denied.  (Tr. 8/30/07 at 10, 16).  The trial court informed Owens that he could: (1) hire an attorney of his own choosing; (2) have Attorney Chamberlain as his court appointed counsel; or (3) represent himself. (Id. at 16). Attorney Chamberlain continued to represent Owens. (Id. at 23-38).  On the first day of trial, but prior to jury selection, the following discussion took place:

> MR. OWENS: Uh, Your Honor * * * I asked last week to replace my counsel with another counsel because I- - I'm- - I am totally not prepared to go to trial. But if I have to, I'm going to do the best that I can. But I would like to state for the record uh, me and Mr. Chamberlain do not see eye-to-eye on this defense. He has not responded to the State's demand for discovery as uh, what he intend to use at trial, the witnesses. He haven't gave the State notice of witnesses intended to be called at trial.

-13-

Mr. Chamberlain took over this case on August the ninth of 2007. This trial date was- - was already been set- - already set, scheduled for September the fourth, 2007. That Mr. Chamberlain had needed more time in order to prepare, or get a defense- - help get this defense together and get these witnesses into evidence* * *

This uh, - - Mr. Chamberlain just got a DVD last night. I mean, not last night, excuse me, on August the thirtieth of 2007 from the State- - just turnt (sic) over a DVD they suppose to enhance uh, did whatever they suppose to have did to- - gave it to Detective Delong, or what he is at the LPD uh, thirteen months later. Thirteen months later they come up with a DVD. And Mr. Chamberlain has not sent this tape- - uh, DVD out to get tested. Now, four days before trial, the State want to slam a DVD, an enhanced version of a DVD on the defense and how we gonna- - I'm not no expert to look at this tape to see how this tape was edited, altered, enhanced. And we have not had enough time to get this tape to an expert- - on the thirtieth, and-

THE COURT: All right. Mr. Chamberlain, are you prepared to go to trial, Mr. Chamberlain?

MR. CHAMBERLAIN: Your Honor, I'm prepared to go to trial. Uh, Mr. Owens and I had two meetings over the weekend. We met for approximately an hour on Friday and met for two and a half hours last night. We don't completely agree regarding defense strategy. However, he's participated in assisting in telling me what his views are. I don't agree with a lot of those views as to how to present the case. And I advised him several times that if once this trial starts, if I start representing him, then that's it. We're- - that's how the case will go. I'll be representing him through the trial.

And he's not entitled to some sort of hybrid representation. Uh, so- - and I asked several times last evening whether or not he was going to be representing himself and told him what he would- - that he would have to tell the Court that this morning before we got started, and advised him what he needed to do and his response was, "We'll just wait and see what tomorrow brings." So we're at that point. I'm prepared to go forward and I'll go forward with the trial. I'll- - if Mr. Owens is going to represent himself, I'll remain on as standby counsel for purposes of self representation.

* * *

THE COURT: * * * Okay, Mr. Owens, do you want to have an attorney represent you or not?

-14-

* * *

MR. OWENS: I would like to finish stating cause I was cut off to go to Mr. Chamberlain. Mr. Chamberlain stated uh, on August the thirtieth when he was handed the DVD and paperwork from the uh, the State's supplemental discovery. He stated in this courtroom that he was gonna get an expert to look at this. He asked you to hold the DVD in land lock. He asked the Court that.

So my point is, he is suppose to be getting a expert. And further, he stated that two hours he came to visit- - two hours. When he came up there last night, this two hours was up there arguing. Up there arguing.

* * *

THE COURT: Do you want an attorney to represent you or not?

MR. OWENS: I want a attorney to represent me. I don't want him. I want an attorney that's gonna get a expert to do this tape, your Honor. That's all I want. Yes, I do want an attorney- -

THE COURT:  Okay, very good. MR. OWENS: But I want an attorney to protect my rights.

* * *

MR. CHAMBERLAIN: At this point, your Honor, I'm going to object. If I'm going to be doing this trial, I'll raise the objection at the proper time if it needs to be done, if it's gonna be introduced.

* * *

THE COURT: He wants an attorney. He doesn't get his choice of attorney. The Court's appointed competent counsel who has indicated he's ready to proceed. He will proceed as soon as we get the prospective jurors in here, and we can handle any evidence problems as they come up.

MR. OWENS: Uh, Your Honor? Your Honor, if I- - this man, Mr. Chamberlain stated he was gonna get a expert to review this DVD. Now, if this attorney right here is not gonna get the stuff- - the requested expert, the Court has a lot of money for this expert. He stated he was gonna get this expert. He stated he was gonna get this tape tested. He stated the tape, the DVD came on August the thirtieth, which is documented.

-15-

Now, trial is today, September the fourth, and we have no expert. Now, if this lawyer is not gonna stand by and get no expert, I do not want him and I want that stated for the record. I am forced in a position to represent myself and I will and I want that noted for the record.

THE COURT: You're not forced to represent yourself.

* * *

THE COURT: All right, we're gonna to stand in recess until the jury comes in.

MR. OWENS: Yes, and your Honor, I will be representing myself- - most definitely.

WHEREUPON, the Court recessed at 9:51 a.m.

WHEREUPON, the Court reconvened at 9:54 a.m.

THE COURT: * * * As the Court left the courtroom moments ago, Mr. Owens, you were heard to be demanding that you're gonna to represent yourself. Is that your decision?

MR. OWENS: Yes, I am, I will represent myself. I'm being forced in this position to represent myself.

THE COURT: Okay, that's your position. But, I want the record to be crystal clear on this. The Court is ready to appoint counsel for you; has appointed counsel for you. I want the record to be clear that you are not being forced by anybody, especially the Court, to represent yourself, that that is your own decision. You are not being forced to represent yourself. You do not have to represent yourself. I don't know if I can make that any clearer.

* * *

(Tr. 9/4-9/7, Vol. I. at 16-22).

[*P13]  The trial court and Owens continued their discussion regarding whether Owens wanted to waive his right to trial counsel.  The trial court made sure that Owens knew he was charged with a first degree felony; that if he was convicted, he could be sentenced to three to ten years imprisonment; and that he was subject to post-release control for five years.  (Id. at 25-26).  In addition, the trial court warned Owens that he would be subject to rules of procedure and evidence that

-16-

would bind a lawyer.  (Id. at 29).  Further, the trial court stated, in pertinent part:

> * * * I must advise you that in almost every case, it would be in my opinion
> that a trained lawyer would defend you far better than you can defend
> yourself.  It is almost always unwise of a defendant on trial uh, to try to
> represent themselves.  You're not familiar with the law.  You're not
> familiar with handling a trial.  You're not familiar with court procedure.
> You are not familiar with the rules of evidence.  I would strongly urge you
> not to try to represent yourself. * * *

(Id. at 35).  The trial court then asked Owens whether he still desired to represent
himself and Owens replied, "Yes I do, your Honor."  (Id. at 36).  Owens
requested that another attorney be appointed as standby counsel; however, the
trial court denied Owens request and appointed Attorney Chamberlain to again
act as Owens' standby counsel.

[*P14]  The fact that Owens filed repetitious motions, irrelevant subpoenas, and
erroneously stated that intent to harm was an element of the offense does not
mean that Owens was incapable of knowingly and voluntarily waiving his right to
counsel.  Owens had previously waived his right to trial counsel on August 30,
2006 after the trial court had made sure that Owens understood the nature of the
crime, potential penalties, possible defenses, and the dangers of representing
himself.  In addition, before accepting his second waiver of counsel, the trial court
conducted an inquiry into whether Owens' understood that he was charged with
aggravated robbery, which is a first degree felony that carries a potential prison
term of three to ten years.  (Tr. 9/4/07-9/7/07, Vol. I at 25-26).  Further, the trial
court asked Owens whether he understood that he would be subject to the same
rules of evidence and procedure that a lawyer must follow.  (Id. at 29).  Owens
answered in the affirmative to the aforementioned questions.  (Id. at 26-29).  In
addition, the trial court strongly warned Owens against representing himself.  (Id.
at 35).  After Owens was provided the aforementioned warnings and information,
he voluntarily waived his right to counsel.

[*P15]  Furthermore, although Owens did not possess any legal education, many
criminal defendants who choose to represent themselves have no legal education.
The mere fact that Owens lacked a legal education does not mean that he was
unable to knowingly and voluntarily waive his right to counsel, especially given
the fact that the record contains motions and subpoenas that Owens had filed
while previously representing himself, and he had stated on the record that he had
completed school and was able to read, write, and understand the English
language.  (Id. at 37).

[*P16]  While Owens waived his right to trial counsel on the first day of trial, this
does not indicate that Owens' waiver was involuntary or unknowingly made.

From the record, it appears as though Owens kept changing his mind regarding whether he wanted to be represented by trial counsel. Additionally, Owens had previously represented himself in this case and was aware of the consequences of waiving his right to counsel.  Thus, Owens' decision to waive trial counsel on the date of trial does not show that his waiver was either involuntary or unknowing.

[*P17]  Owens distinction between robbery and theft, and his argument that the crime only constituted a theft was a matter of Owens' trial strategy, and had no effect on whether his waiver of counsel was knowing and voluntary.

[*P18]  Finally, the fact that Owens and Attorney Chamberlain disagreed about whether having an expert review the surveillance tape was necessary, and Owens' mistaken belief that representing himself was the only way to preserve the error does not effect the knowing and voluntary nature of Owens' waiver of counsel. Attorney Chamberlain indicated that he would raise an objection at the proper time if the tape was going to be introduced into evidence.  In addition, the defense was able to cross-examine the prosecution's witnesses about the enhanced video surveillance.  The trial court properly informed Owens about the potential penalties he would face if he was convicted and cautioned him against waiving his right to counsel.  After being so informed, Owens chose to waive his right to be represented by counsel.

[*P19]  After reviewing the record, we find that Owens knowingly, intelligently, and voluntarily waived his right to trial counsel.

*State v. Owens*, 2008-Ohio-4161 at ¶¶8-19 (emphasis added).

Based on this Court's own review of the trial transcript, it is clear that the state appellate court accurately summarized the exchanges between Owens and the trial court regarding the waiver of counsel.  The trial court clearly informed Owens on at least two occasions that he was subject to imprisonment of up to ten years *and* five years of post-release control *after* prison. (Trial Tr. 26-27; Oct. 30, 2006 Hearing Tr. 29.)  Considering the merits of that portion of Owens's habeas claim previously ruled defaulted – not specifically being informed  as to the consequences of violating the conditions of post-release control under Ohio law – the state appellate court found that Owens was properly informed of the potential penalties.  Any failure to inform Owens of the specific penalties for violating post-release control does not rise to the

-18-

level of a due process violation or render his waiver of the right to counsel unknowing, unintelligent, or involuntary.[4]  Although a valid waiver requires that a defendant apprehend "the range of allowable punishments," for the crimes charged, *Von Moltke v. Gillies*, 332 U.S. 708, 724 (1948), Owens has failed to point to any clearly established federal law that would support the proposition that a failure to inform a defendant of the precise mechanism by which post-release control or parole operates renders an otherwise valid waiver defective.

Furthermore, Owens was specifically apprised of the elements of the only offense of which he was charged – aggravated robbery.  (Oct. 30, 2006 Hearing Tr. 27.)  He indicated to the trial court that he understood "that there may be certain defenses or mitigating evidence," and that his lack of knowledge of these issues or the procedures for introducing evidence could not serve as grounds for appeal.  (Oct. 30, 2006 Hearing Tr. 31.)   Finally, the trial court also explained to Owens that he could not later claim ineffective assistance of counsel due to his own incompetent representation.  (Trial Tr. 31.)

The state appellate court correctly identified the controlling principles of federal constitutional law as it relates to waiver of the right to counsel, and its application of that law to the facts was not unreasonable.  To the contrary, the state appellate court's review was detailed, thorough, and objectively reasonable.  As such, Owen's sole ground for relief is not well taken.

### V.  Evidentiary Hearing

On March 2, 2011, Owens filed a Motion for Appointment of Counsel and Motion for

---

[4]  It also bears noting that in the guilty plea context, Ohio courts have found that "a court need not provide a rote recitation of the statute to comply with R.C. 2943.032(E)."  *See e.g., State v. Poston*, 2007 Ohio App. LEXIS 3539, 2007-Ohio-3936 at ¶11 (Ohio Ct. App., May 14, 2007); *accord State v. Bari*, 2008 Ohio App. LEXIS 3117, 2008-Ohio-3663 at ¶51 (Ohio Ct. App., July 24, 2008).

-19-

Leave Requesting a Habeas Hearing.  (Doc. No. 18.)

Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 459-460 (6th Cir. 2001) (*citing Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994) (citation and internal quotation omitted)).  However, a petition may be summarily dismissed if the record clearly indicates that the petitioner's claims are either barred from review or without merit. *Id.*  In this case, upon review of the pleadings and transcripts, the procedural issues presented can be resolved from the record.  An evidentiary hearing is, therefore, not required.

Owens previously sought appointment of counsel.  This Court denied his motion on June 23, 2010, explaining that "[a] petitioner has no absolute right to be represented by counsel on federal habeas corpus review" and that "the interests of justice in relation to the instant case do not require the appointment of counsel.  *See* 18 U.S.C. § 3006A(a)(2)(B)."  (Doc. No. 14.) Nothing has transpired since the Court's ruling causing it to reconsider its decision.  As such, Owens's motions for appointment of counsel and for a hearing (Doc. No. 18) are DENIED.

### VI.  Conclusion

For the foregoing reasons, it is recommended that Owens's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: April 27, 2011

-20-

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).